IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROGER D. STEVENS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-20-318-SPS |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|    Defendant. | ) |

## OPINION AND ORDER

The claimant Roger D. Stevens requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 40). He has a high school equivalent education and has previously worked as a security guard, commercial painter, aircraft painter, and painting supervisor (Tr. 62-63, 204). The claimant alleges that he has been unable to work since April 1, 2017, due to posttraumatic stress disorder ("PTSD"), tinnitus, and fibromyalgia (Tr. 203).

## Procedural History

On February 15, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 21, 2020 (Tr. 15-26). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that he could only frequently, but not constantly, handle and finger bilaterally; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and that he must avoid concentrated exposure

to temperature extremes, humidity, and hazards. Additionally, he found the claimant was able to understand, recall, and perform simple and detailed tasks and make related judgments; able to focus for two-hour periods with routine breaks and maintain persistence and pace for an eight-hour workday and 40-hour workweek despite psychological symptoms; and that he was able to adapt to a work setting and some changes in the work environment but could have no contact with the public (Tr. 19). The ALJ thus concluded that the claimant could return to his past relevant work as a security guard (Tr. 25). Alternatively, he concluded that the claimant was not disabled because there was other work he could perform, *e. g.*, merchandise marker and canning machine tender (Tr. 26).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinions of the state reviewing physicians, and (ii) properly evaluate his subjective symptoms. The Court agrees with the claimant's second contention, and the ALJ's decision must be reversed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the cervical spine, fibromyalgia, hypertension, a history of bilateral carpal tunnel syndrome release surgeries, obesity, bipolar II disorder, major depression, and PTSD (Tr. 17). The relevant medical record reveals that the claimant has a 100% VA service-connected disability rating solely related to his PTSD, as well as a rating of 20% for fibromyalgia and 10% for tinnitus (Tr. 279). From September 13, 2018 through November 1, 2018, the claimant participated in a seven-week inpatient program for his PTSD (Tr. 368-369). During that time, his other diagnoses included recurrent major depression,

hypertension, allergic rhinitis, low back pain, and fibromyalgia (Tr. 368-369). Through the course of treatment, the claimant reported some improvement of symptoms and progress toward goals, except that he did not report improvement in his sleep (Tr. 370). His discharge was based on successful completion of the program, and he was enrolled in aftercare beginning two weeks later (Tr. 371). The discharge notes reported that the claimant had been unemployed since February 2017 and expressed optimism that, with ongoing treatment, he would be employable "in the near future" (Tr. 371).

On May 16, 2019, Dr. Vanessa Kincheloe, Ph.D., conducted a psychological examination of the claimant (Tr. 550-557). She found he had intact insight and judgment; good attention and concentration, with good immediate memory and fair remote memory; and his score on the Mini Mental Status Exam was within the normal range (Tr. 552-554). She assessed him with PTSD and bipolar II disorder, with anxious distress, noting that his prognosis was fair and dependent on managing his symptoms of depression, mania, anxiety, panic, and PTSD, and receiving adequate support (Tr. 554). She indicated that he would be able to manage funds, but that his impulse control difficulties may mean that he would need assistance at times (Tr. 557).

On August 19, 2019, the claimant's depression score placed him as having moderate to severe depression (Tr. 610-611). In September 2019, mental health treatment notes reflect that the claimant continued to complain of episodes of insomnia but stated that he had made progress with his PTSD symptoms and that symptoms were less intense that previously (Tr. 594-595). However, the notes reflect that the claimant still reported that his PTSD symptoms caused "clinically significant distress in important areas of

functioning" (Tr. 595). In November 2019, the claimant again reported episodes of insomnia and struggles with irritability, and notes indicated that the claimant hoped to "get better and function well and independently in the future" (Tr. 671). On January 17, 2020, the claimant denied depression, but expressed continued anxiety and fatigue despite being more motivated (Tr. 655).

As to his physical impairments, an x-ray of the cervical spine conducted on June 14, 2016 had revealed mild degenerative disc disease of the C5-6 and C6-7 disc spaces (Tr. 505). On February 5, 2019, the claimant had an MRI of his left elbow, which revealed a probable strain or partial tearing, but no complete tear (Tr. 468, 530).

State agency physicians determined initially and upon review that the claimant's physical impairments were nonsevere (Tr. 89, 104). As to his mental impairments, Dr. Stephanie Crall, Ph.D., found that the claimant could perform multi-step tasks that required limited judgment, but that he would be unable to perform tasks involving multi-layer decision making or supervisory tasks; that he could interact with others effectively, including the general public, on a superficial basis, and that he could adapt to occasional change within a usually stable work environment (Tr. 88). On reconsideration, Dr. Brian Snider, Ph.D., found that the claimant was able to understand, recall, and perform simple and detailed tasks and make related judgments; that he was able to focus for two-hour periods with routine breaks, and pace and persist for eight-hour workdays and a 40-hour workweek despite psychological symptoms; that he was able to tolerate working in the presence of the public when frequent conversation or communication is not needed; and that he could adapt to a work setting and some changes in the work environment (Tr. 103).

At the administrative hearing, the claimant testified that in 2017 he was unable to sleep at night and therefore had difficulty staying awake at work during the day, and that his medications caused dizziness (Tr. 46). He further testified that he enrolled in the seven-week inpatient treatment course for his PTSD based on a recommendation from his psychologist, and that he has continued to receive PTSD treatment since (Tr. 47-48). He stated that he has difficulty focusing, including an inability to watch an entire movie and a tendency to leave tasks partially undone, but that he watches a lot of television during the day (Tr. 49, 58). When asked about intrusive thoughts, he stated that he has them a lot, and that he has a tendency to dwell on things instead of dealing with them (Tr. 50-51). He also testified that he leaves home about twice a week for short trips to the convenience store, but otherwise does not socialize (Tr. 51-52). When asked, he testified that he could stand five or ten minutes at a time and lift ten to fifteen pounds (Tr. 56). The ALJ asked the claimant about his ability to work with others, and he testified that he got along better with other veterans but had problems with "civilians" (Tr. 60-61).

In his written opinion, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence in the record. In discussing the claimant's subjective symptoms, the ALJ found that the claimant's description of symptoms and limitations were inconsistent with the record as a whole and were not substantiated by objective findings (Tr. 20). The ALJ recited the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms

>are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 20). In support, the ALJ noted that the claimant's complaints were not supported by objective medical testing such as x-rays or MRIs, by critical physical or mental health treatment, by inpatient treatment of hospitalizations related to physical impairments, or by evaluations during the relevant timeframe (Tr. 20).

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

>First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4]   As part

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].

The claimant contends, *inter alia*, that the ALJ failed to consider the factors set forth above when evaluating his subjective statements and improperly discounted such statements with boilerplate language that did not explain the reasons for his findings. The Court agrees. Although the ALJ examined the evidence of record and outlined the appropriate process for evaluating the claimant's pain and other symptoms in his decision, he did not mention or discuss any of the factors set forth in SSR 16-3p and 20 C.F.R. §§ 404.1529(c)(3), and further failed to properly apply those factors to the evidence. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

Importantly, the reasons given by the ALJ for finding the claimant's subjective complaints were not consistent with the medical and other evidence and are not entirely supported by the record. For example, the ALJ noted that the claimant had no inpatient hospitalizations for his physical impairments but failed to acknowledge the claimant underwent *seven weeks* of inpatient treatment for his documented mental impairments *or* that he continued to experience the effects of these impairments thereafter. Moreover, the record consistently reflects that the claimant suffered with insomnia and that medications did not help or caused undesirable side effects. Similarly, the ALJ asserted that the claimant's symptoms were inconsistent with his statements, in part, because they were not supported by "critical [] mental health treatment," despite his seven-week inpatient stay and consistent reports to his mental health providers. And while the ALJ recited much of the evidence, he failed to address where it supported the claimant's testimony. A direct examination of such "perceived" inconsistencies reveals that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (*citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

The Court further finds that the ALJ's error with regard to the claimant's subjective statements had a direct effect on his assessment of the claimant's ultimate RFC. "The RFC assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). In particular, the ALJ's failure to properly assess the consistency of the claimant's statements regarding his subjective symptoms highlights that the ALJ has further failed to explain how, *inter alia*, the claimant's documented insomnia, anxiety, and depression are accounted for in the RFC. Simply asserting that a claimant is able to focus and persist during work hours "despite psychological symptoms" is insufficient without connecting that conclusion to evidence in the record. The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Because the ALJ failed to properly analyze the claimant's subjective statements of pain and other symptoms, the Commissioner's decision is reversed and the case remanded to the ALJ for further analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of March, 2022.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**